CLARENCE SINGLETON v. STATE.

No. A-7423.    Opinion Filed Sept. 6, 1930.
(291 Pac. 145.)

P. E. Reed and E. M. Anderson, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was by information charged, with one John Doe, with obtaining from Ralph Mefford, by ex-

tortion, one Ford roadster; was tried separately, convicted by the jury and the punishment left to the court, and was sentenced by the court to serve a term of three years in the state penitentiary at McAlester. Motion for new trial was filed, considered, overruled, and the defendant has appealed to this court.

The testimony on behalf of the state, in substance, is that Ralph Mefford was living with Mr. J. A. Rhodes, two miles north and one mile west of Coweta, in Wagoner county, Okla.; that it was about 30 miles from the home of Clarence Singleton, who lived about three miles southwest of Inola, in Rogers county, Okla. The defendant had known the prosecuting witness prior to the date of the alleged offense, and had bought a 1924 model Ford car from him; the prosecuting witness having bought the car from Ed Cobb, a car dealer at Coweta; at the time the car was purchased Ed Cobb did not give the purchaser a certificate of title, but later advised him the certificate was held at his garage and he could get it if he would call for it. On Saturday, April 14, 1928, Ralph Mefford and Miss Gladys Booth, who lived a short distance from the Rhodes home, drove to Webber Falls, in a 1927 model Ford car, for the purpose of bringing Virgil Booth home with them. On Sunday morning, before their return Sunday night, the defendant and a man, representing himself to be named Brown, came to the home of Mr. Rhodes inquiring for Ralph Mefford; the defendant told Mr. Rhodes that Brown was the law from Rogers county; Mr. Rhodes was advised they wished to see Ralph Mefford about the title to the 1924 car he had sold the defendant; Mr. Rhodes asked them to get out and wait until Mefford returned from Webber Falls, as he was expected home that night; the defendant announced they would not wait but would go on to town, and drove away from the Rhodes place; later,

and after the sun was down, they returned to the Rhodes place, stating they wanted to see Ralph Mefford about the 1924 model car, stating the defendant had been in jail two weeks over the car and was out at the time on a $3,000 bond; Rhodes assured the defendant the car had not been stolen and that he could get a certificate of title from Ed Cobb, at Coweta, from whom Mefford had purchased the car; the defendant and Brown left the Rhodes home stating they would try to meet Mefford on the road; about 12 o'clock that night Ralph, Gladys, and Virgil Booth returned from Webber Falls; they turned off the public highway and were driving a narrow lane leading to the Rhodes home when they observed a car parked in the lane blocking their way; the defendant and Brown came up to the Mefford car and told Mefford that Brown was the sheriff of Rogers county, and that the defendant Clarence Singleton had run over a woman and killed her with the car that Mefford had sold him and that parties were wanting damages; that the defendant in this case had been in jail two or three weeks, and was then out on $3,000 bond over the car he had bought from Mefford, and that the matter would have to be straightened up some way; the defendant and Brown then asked Mefford if he had title to the car he was driving, which was a 1927 model, and he advised them he had title to the car; the defendant and Brown then demanded him to show them the title to the car and Mefford told them it was at the house; the defendant and Brown then directed Mefford to take Virgil and Gladys home, which was a short distance from the Rhodes home; when the car started the defendant and Brown got on the side of the prosecuting witness' car and accompanied them to a gate near the Rhodes home and remained at the car until Mefford returned from taking Virgil and Gladys up to the house; when Mefford returned he was advised by the defendant in this case, Clarence

Singleton, that the title to the car would have to be straightened up; they went with Mefford to the home of Rhodes to see if the title to the 1927 model Ford roadster he was driving was in his name; Mefford showed them the title and put the title in his pocket in the presence of both the defendant Singleton and Brown; when they left the Rhodes home they went in the Mefford car; he thought he was being taken to Coweta to see Ed Cobb and get the title to the 1924 car; when they left the Rhodes home they traveled the lane a short distance until they came to the Singleton car parked in the lane, when Singleton got out and got in his car and followed Mefford and Brown; the defendant and Brown passed Coweta and made no effort to obtain the title to the car from Ed Cobb, and drove on to the home of the defendant about 30 miles, near Inola, arriving there some time between midnight and daylight; the supposed officer, Brown, was armed with a 45 Colts, and witness Mefford claims he was fearful, as though they might shoot him or do him some injury; Mefford was kept by Brown and the defendant at defendant's home that night, and the next morning was told by Singleton, the defendant in this case, and Brown that he would have to give them $350 on account of the 1924 car running into a woman and killing her; that he must fix it up some way, they would have to have the money, and if he would turn his 1927 model Ford car over to them, or the money, they would turn him loose; that if he did not, they would lock him up and send him to the penitentiary; Mefford agreed to transfer his title to the car to the defendant Singleton to prevent them sending him to the penitentiary, and early Monday morning the defendant took Mefford to Inola in Mefford's car, where he made the assignment of the certificate to his 1927 model Ford car to Singleton; Mefford stating he made it through fear of being prosecuted and sent to the penitentiary by the de-

fendant and Brown if he did not give them the car. The defendant and Mefford returned to the defendant's home, and the defendant had his sister take the prosecuting witness a part of the way home, and he walked the remaining distance.

The testimony, in substance, further shows that Clarence Singleton had been a resident of Rogers county for many years and knew the sheriff of that county; that the defendant never at any time went to Coweta to see Ed Cobb about the certificate of title to the old 1924 model Ford car.

The evidence of the defendant, in substance, was that he lived three and a half miles southwest of Inola, in Rogers county, on a farm with his father; on Saturday evening, prior to the 15th day of April, 1928, he was in Inola with his father and was sitting in his car preparatory to returning home when a tall fellow came up to the car and asked if his name was Clarence Singleton, and if he had sold a car to a man by the name of Elmer Thomas; the defendant replied he had; he then told the defendant his name was Brown and that he was the law from Tahlequah, and that Singleton was the man he was looking for; that the man who claimed to be Brown arrested him, and told him he had stolen a car; the defendant advised him he had bought the car from Ralph Mefford; and if he could see Mefford he could get the title to it; that Brown agreed they would find Mefford; as it was getting late, and Saturday night, it was suggested that Brown go home with the defendant and his father and stay that night, and they would see Mefford the next morning, which suggestion was agreed to by the party; the next morning Singleton and Brown went to the home of J. A. Rhodes some 30 miles away to see Mefford; Mefford was not at home and the defendant and Brown went to

Coweta and ate dinner and later drove back to the Rhodes home to see if Mefford had returned; the defendant claims that while at the Rhodes home he stated the failure of Mefford to furnish him a certificate of title to the 1924 model car he had sold him had caused him trouble; that he had sold it to a man by the name of Elmer Thomas in Cherokee county, and that Brown had arrested him on account of it and wanted to see Mefford and get the trouble straightened out; that he had been taken to jail and kept three or four weeks, and was placed under $3,000 or $4,000 bond on account of it. Brown and Singleton remained at the Rhodes home for a time and left, trying to find Mefford on the road; they drove down the road about a half of a quarter and parked their car and waited for Mefford; that Brown became impatient and was about to take the defendant away when Mefford and the Booth girl and boy came up in a 1927 model Ford car; Brown advised the defendant he would question Mefford regarding the 1924 model car of the defendant; Brown doubted defendant's story in regard to the purchase of the car; Singleton, the defendant in this case, greeted Mefford and informed him that he was in trouble over the car he had sold him; Brown then questioned Mefford about the title to the 1924 model car, and finally told him he would have to take him to jail over his failure to provide the defendant with a title to the car; Brown then got on the side of the car Mefford was driving, and they drove up to a gate near the Rhodes home and parked the car, and Brown permitted Mefford to go with the Booth boy and girl to their home, which was a short distance away; Brown and the defendant waiting for Mefford where the Mefford car had been parked at this gate; the defendant testified that Brown asked Mefford if he had a certificate of title to the 1927 model car he was driving, and was told by Mefford that he did have at the house, and Brown then demanded

that Mefford show him the title; they went to the Rhodes home and went in the house; the defendant remained in the front room while Mefford and Brown went into the adjoining room and had a conversation regarding the title to a car; the defendant did not understand what was said; shortly thereafter they all left in Mefford's car and drove down the lane to where the defendant had parked his car when they first met Mefford in the road; the defendant got in his car and followed Brown and Mefford, finally passing them on their way to his home; after he arrived home the prosecuting witness and Brown drove up and Brown asked if they could stay all night and he told them they could; the next morning Mefford asked Singleton to buy his 1927 car, and Singleton agreed to do it if Mefford would make the proper transfer of title.

Singleton and Mefford drove to Inola and a transfer of title was made to Singleton by Mefford, before a notary public. The defendant further testified they returned to the defendant's home and he and his wife went to the cellar and got $350 and brought it in the room where Mefford, Brown, and the defendant's father were and offered the money to Mefford; Mefford instructed the defendant to give the money to Brown, and the defendant handed the money to Brown, who counted it and said the amount was $350; that the defendant Singleton received the car, claiming to have purchased it from Mefford, and that he paid $350 to the officer claimed to have been Brown; that the question came up as to who would take the law to Tahlequah, and the defendant offered to pay for having him taken back, and it was finally agreed that the defendant Singleton would take him home to Tahlequah; the defendant's sister taking the prosecuting witness Mefford part of the way to his home, and he walked the remainder of the way.

The testimony further shows that the defendant had not met Brown prior to April 14th, and that he had not seen or heard of him since he took him to Tahlequah on the 16th day of April, 1928.

This is all the testimony that it is deemed necessary to set out for the purpose of arriving at an opinion as to whether or not the defendant was accorded a fair and impartial trial by a competent jury.

The defendant has assigned eight errors alleged to have been committed by the court in the trial of his case. Assignments 3, 4, 5, 6, and 7 have been grouped together by the defendant under one head.

Section 2133, Comp. St. 1921, is as follows:

"Extortion is the obtaining of property from another with his consent, induced by a wrongful use of force or fear, or under color of official right."

Section 2134, Comp. St. 1921, defines what constitutes extortion as follows:

"Fear such as will constitute extortion may be induced by a threat, either:

"First. To do an unlawful injury to the person or property of the individual threatened, or to any relative of his or member of his family; or,

"Second. To accuse him, or any relative of his or member of his family, of any crime; or

"Third. To expose, or impute to him, or them, any deformity or disgrace; or,

"Fourth. To expose any secret affecting him or them."

It is urged by the defendant that he acted in good faith, and he thought he would be cleared by the law as soon as he found Mefford and convinced the man, who

claimed to be Brown and an officer, that he had purchased the car from Mefford, and the defendant denies any intention on his part to extort from the prosecuting witness his car.

The evidence of the witnesses for the state and the defendant is in direct conflict. The testimony of the state clearly shows the defendant and this man, who seems to be unknown to everyone, went to the home of the prosecuting witness to see him regarding the title to a car the defendant had bought from the prosecuting witness. It is further shown that the defendant represented to Mr. Rhodes, when he went to the Rhodes home, that he had been under arrest and in jail, and was out on a three or four thousand dollar bond. It is further shown by the testimony that from Saturday afternoon up until Monday morning the defendant in this case was continuously in the company of this man known by the name of Brown; that the defendant represented to the prosecuting witness and Mr. Rhodes that he had been under arrest and had been in jail; that Brown stayed at the defendant's home on Saturday night and was with the defendant all day Sunday; they were at the Rhodes house twice on Sunday, and then waited on the road until the prosecuting witness Ralph Mefford came along, and when he came he was taken into custody and the defendant and Brown rode with the prosecuting witness to a gate near the Rhodes home and there waited until Mefford walked to the Booth home with the Booth girl and boy; when he returned to the car Brown got in the car with the prosecuting witness and they started from that place toward the home of the defendant, which was a distance of more than 30 miles, the defendant following them in his car; somewhere between the Rhodes home and the defendant's home the defendant claims to have passed the prosecuting

witness and Brown, and later they arrived at his home and asked to be permitted to stay over night. The next morning the defendant drove with the prosecuting witness to Inola, where he executed a transfer to his 1924 model Ford car to the defendant. The contention of the defendant is that he bought the car from the prosecuting witness and paid him $350 in cash for it, and the prosecuting witness told him to deliver the money to Brown; later he took Brown in his car and drove to Tahlequah. The record is silent as to who Brown was or where he lived. The defendant claims he first saw him in the town of Inola, and that he last saw him when he drove to Tahlequah.

The defendant also claims he sold the 1924 model car he bought from Mefford to a man by the name of Elmer Thomas who lived in Cherokee county, Okla. A letter was introduced in the record purporting to be from Thomas regarding the title to this car. Thomas was not called as a witness, nor was the man Brown. It is difficult from the testimony in the record to reach a conclusion that the defendant was not well acquainted with Brown and knew where he lived. It is clearly shown that the defendant and Brown were co-operating together.

The defendant in his argument urges that the testimony is insufficient to sustain the verdict of the jury. With this contention we cannot agree. The jury heard all the evidence, and, if it believed the evidence on behalf of the state, it was fully justified in returning a verdict of guilty. On the other hand, if it believed the evidence of the defendant, it would be justified in returning a verdict of not guilty. The question of the sufficiency of the evidence has been considered by this court many times.

In Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352, this court said:

"Where the evidence and the reasonable and logical inferences and deductions to be drawn from it are sufficient to convince the jury beyond a reasonable doubt of the guilt of a defendant, this court will not disturb the verdict for insufficiency." Davis v. State, 32 Okla. Cr. 36, 239 Pac. 940; Shields v. State, 32 Okla. Cr. 344, 240 Pac. 661; Walton v. State, 32 Okla. Cr. 133, Pac. 141; Id.; 32 Okla. Cr. 342, 240 Pac. 666.

In Whitten v. State, 25 Okla. Cr. 447, 221 Pac. 115, in the syllabus, this court said:

"Evidence considered, and held sufficient on appeal to sustain the verdict and judgment. In considering the sufficiency of the evidence, the function of this court is limited to ascertaining whether there is a basis in the evidence on which the jury could reasonably conclude that accused is guilty as charged."

The evidence is amply sufficient to sustain the verdict of the jury.

It is next urged by the defendant in his eighth assignment of error that George Feezell, one of the jurors, propounded incompetent, irrelevant, and immaterial questions to the witness. The record discloses that one of the jurors Feezell stated he would like to ask the defendant a question, and Mr. Reed, counsel for the defendant, stated, "You have the consent of the defendant to ask anything you want to, and the juror then proceeded to ask the witness a number of questions. In view of the fact that the juror had the consent of the defendant to propound any question he wanted to propound to the witness, we hold that the defendant was not prejudiced by reason of the questions asked by the juror. The defendant had given his consent for the juror to question the witness and

was present and interposed his objection to questions he thought were incompetent, irrelevant, and immaterial, and the court ruled upon the same, and the defendant saved an exception. From an examination of the record we fail to find anything in the questions propounded by the juror that would prejudice the rights of the defendant in the trial of his case. The juror propounded several immaterial questions, yet there is nothing in the questions that tend to show any prejudice on the part of the juror against the defendant, but only tended to show he was seeking information as to what had really occurred between the different parties.

The defendant urges that the court erred in overruling his motion for a new trial. The motion for a new trial was properly overruled.

The record in this case discloses a very peculiar state of facts. It tends to establish the fact that the defendant Clarence Singleton and the unknown defendant Brown entered into an agreement to obtain Mefford's car; that they went to his home and took him in custody and brought him to the home of the defendant, Singleton, and, on the morning he surrendered his car to them, they told him if he did not get $350 or give them his Ford car they would send him to the penitentiary; that the prosecuting witness, acting under the statement made by the defendant and the man named Brown, it being represented to the witness that Brown was an officer, and believing he would be sent to the penitentiary, went with the defendant Singleton to Inola and signed over the title to the car to defendant Singleton. The jury had before it all the testimony, and the question as to whether or not $350 was paid by the defendant to Brown, under the directions of the prosecuting witness Mefford, was for it to decide, and by its verdict the jury said they did not believe the statements to be true.

We have carefully studied the record, and the instructions of the court, and find no fundamental or prejudicial errors sufficient to warrant a reversal of the case.

The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.